# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LELAND GARNER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:10-cv-01631-AWI-SMS<br><br>ORDER DENYING PLAINTIFF'S MOTIONS TO AMEND THE COMPLAINT AND FOR REMAND TO STATE COURT<br><br>(Docs. 20 and 34) |

　　　　Plaintiff Leland Garner moves for leave to amend his complaint to add claims for declaratory relief, malicious prosecution, and intentional infliction of emotional distress, and to add George S. Arata and Allied Insurance Company as a defendants.  Because the joinder of Arata would destroy diversity, Plaintiff also moves for remand to the California Superior Court.  Defendant Nationwide Mutual Insurance Company opposes the motions.  Having reviewed the record and applicable law, the Court denies Plaintiff's motions.

I.　　**Procedural and Factual Background**

　　　　According to the allegations of Plaintiff's complaint, on May 2, 2002, Plaintiff was driving on McHenry Avenue in Modesto, California, when a van in the lane to Plaintiff's right

1

suddenly changed lanes without signaling, cutting off Plaintiff's pickup truck. Although the pickup truck struck the van, its driver continued into the left turn lane, turned left onto Granger Avenue, and fled. The car behind Plaintiff, driven by Christopher Paul Michael, rear-ended Plaintiff's pickup and pushed the pickup into a fourth vehicle ahead of it. The fourth vehicle also fled.

In the second collision, Plaintiff received a severe blow to his abdomen from the "old-style" air bag in his 1996 pickup. The resultant injuries required extensive vascular surgeries, including two replacements of his aorta. Subsequent septic infection caused kidney failure, requiring Plaintiff to be hospitalized for many months. Plaintiff's medical bills exceeded $2 million. Kidney dialysis cost $30,000 per month. Plaintiff estimated the value of his injuries to be $6 million.

Plaintiff owned one-third of his employer, Charles Felmley Enterprises, Inc. ("CFE"), which operated car washes in Modesto. CFE continued to pay Plaintiff's salary while he was disabled by his injuries. Following the accident, Plaintiff elected to use Anthem Blue Cross medical insurance rather than file a workers' compensation claim.

Defendant Nationwide,[1] through Allied Insurance Company, issued a business automobile insurance policy to CFE, in which all three of its owners, including Plaintiff, were named insureds. Michael was underinsured, having liability insurance with $15,000 policy limits. On April 30, 2003, Garner sued Michael in Stanislaus County Superior Court. By latter dated July 9, 2003, Plaintiff notified Defendant's claims department and demanded arbitration. After

///

---

[1] References to "Defendant" are to Defendant Nationwide.

Defendant approved Plaintiff's settlement with Michael for his policy limits, Plaintiff dismissed the complaint on March 5, 2004.

Thereafter, Plaintiff's attorney, Stephen Solano, informally negotiated with Defendant's adjusters and its attorney, Matthew G. Salazar. By April 2005, Salazar and Solano agreed that the case was ready for mediation or arbitration following depositions of Plaintiff and expert witnesses. Although depositions were scheduled to begin in June 2005, they were cancelled when Plaintiff relapsed due to sepsis and underwent a second aorta transplant.

In October 2005, Solano notified Salazar that Plaintiff could proceed with arbitration. Salazar subpoenaed Plaintiff's most recent medical records and requested that Garner provide a demand letter. Solano sent the demand letter on January 20, 2006. Salazar advised Solano that Defendant had transferred the case to attorney George S. Arata.

Arata took Plaintiff's deposition on February 27, 2006. Solano informed Arata that Anthem Blue Cross, which had paid Plaintiff's medical bills, was not asserting a medical lien. Thereafter, Arata informed Solano that Defendant's subsidiary, Allied Insurance Company, was entitled to credit for all benefits that Plaintiff would have been paid by his workers' compensation carrier.[2] Replying that workers' compensation was a red herring, Solano requested that the claim immediately be sent to arbitration. Defendant did not respond. On April 17, 2006, Plaintiff petitioned the California Superior Court for an order compelling arbitration and

---

[2] By the time Arata raised the workers' compensation issue, the statutory period in which Plaintiff could file for workers' compensation had ended. Plaintiff contends that, had he elected to apply for workers' compensation coverage, instead of relying on his medical insurance, the workers' compensation proceeds would have first been applicable to the uninsured/underinsured motorist judgment, and Defendant would have still had to pay benefits to its policy limits for Plaintiff's uninsured/underinsured motorist claims. Plaintiff argues that Defendant engaged in a "malicious, burdensome, and frivolous scheme to delay arbitration in the belief [Plaintiff] would die before arbitration so [Defendant] would not suffer a large monetary loss." Complaint, ¶ 17.

3

appointing arbitrators. On November 20, 2006, the California Court issue a declaratory judgment that Plaintiff was not required to file for workers' compensation.

On December 29, 2006, Defendant filed a separate indemnity action against the California State Compensation Insurance Fund, Plaintiff's workers' compensation carrier, which the state court denied April 7, 2008. (Plaintiff alleges that Defendant, having unsuccessfully filed complaints for indemnity against the State Fund in two prior actions, knew the Court would summarily dismiss a complaint for indemnity, but maliciously brought its indemnity claims as a means of further delay.)

Defendant repeatedly cancelled scheduled arbitration dates at the last minute, claiming its experts were unavailable. After Defendant cancelled arbitration scheduled for June 2008, again claiming unavailability of its experts, it moved to dismiss Plaintiff's right to arbitrate, contending that Plaintiff had failed to arbitrate his case within the five-year statutory period. Arbitrator Matthew Hawkins denied the motion on December 10, 2008, noting, "[I]t is abundantly clear that [Plaintiff] has gone to great efforts to move this case forward over the course of many years and that Defendant's position on the comp issue and its requests for rescheduling made completion by July 2009 impossible, impractical and futile and that [Defendant] should be estopped from asserting this defense."

In a letter dated August 3, 2009, in response to Arata's request to Solano, Anthem confirmed that it did not assert a lien on first-party uninsured motorist benefits. The arbitration hearing scheduled for August 17, 2009, could not proceed since Defendant again raised the workers' compensation issues even though the arbitrator lacked jurisdiction to hear them. Plaintiff refused to let arbitration proceed since any determination on the workers' compensation

defense would not be appealable.  Plaintiff returned to the California court, which dismissed Defendant's summary judgment motion and ordered that the workers' compensation defense could not be raised in arbitration.  Arbitration was then rescheduled for March 2010.

On the last possible date, Defendant filed a writ of mandate for a stay of arbitration, again asserting its workers' compensation defense.  The March 2010 arbitration was cancelled.  On April 8, 2010, the California Court of Appeals denied Defendant's writ and lifted the stay of arbitration.  In May 2010, Defendant advised Plaintiff that it would appeal the Appellate Court's decision to the California Supreme Court.  It did not do so.  Arbitration was then scheduled for July 27, 2010.  On May 20, 2010, Defendant advised Hawkins that it intended to move for summary judgment and would not proceed to arbitration on July 27, 2010.

On July 9, 2010, Plaintiff filed a complaint for damages in California Superior Court.  Defendants included Nationwide employee Cheryl Henkel; Nationwide's attorneys George S. Arata and Bradley J. Swingle; and law firms Curtis & Arata, and Arata, Swingle, Sodhi & Van Egmond.  It alleged the following causes of action: (1) Conspiracy (to Breach Covenant of Good Faith and Fair Dealing) against Defendants Arata, Swingle, Henkel, and Does 1-10; (2) Breach of Good Faith and Fair Dealing (Bad Faith Tort) against Defendants Nationwide and Allied; (3) Unfair Business Practices Pursuant to California Business and Professions Code § 17200 *et seq.* and Injunction against Defendants Nationwide and Allied; (4) Intentional Infliction of Emotional Distress against all Defendants; and (5) Waiver, Estoppel and Breach of Contract against Defendants Nationwide and Allied.  Plaintiff claimed punitive damages for the First, Second, and Fourth causes of action.

///

5

On August 27, 2010, Plaintiff filed a First Amended Complaint alleging causes of action for (1) Breach of Good Faith and Fair Dealing (Bad Faith Tort); (2) Unfair Business Practices Pursuant to California Business and Professions Code § 17200 *et seq.,* and Injunction; (3)Waiver, Estoppel and Breach of Contract; and punitive damages, all against Defendants Nationwide and Allied. Nationwide answered on September 8, 2010, and removed the complaint to federal court on September 9, 2010. On October 13, 2010, Plaintiff moved for leave to amend the First Amended complaint to add causes of action for declaratory relief, malicious prosecution, and intentional infliction of emotional distress, and to again name as Defendants George S. Arata and Allied Insurance Company.

## II. Discussion

### A. Leave to Amend (F.R.Civ.P. 15)

Under F.R.C.P. 15(a)(2), the court should freely give leave to amend when justice requires. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). This policy should "'be applied with extreme liberality.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), *quoting Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182. A court

///

must be guided by the purpose of Rule 15, which is facilitating decisions on their merits. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

"[A] district court may deny leave to amend where there is any apparent or declared reason for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir. 1991), *quoting Foman*, 371 U.S. at 182 (*internal quotation marks omitted*). "Not all of the factors merit equal consideration," however; "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Leave to amend is within the trial court's discretion. *Swanson v. U.S. Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996); *United States v. County of San Diego*, 53 F.3d 965, 969 n. 6 (9th Cir.); *cert. denied*, 516 U.S. 867 (1995).

Plaintiff's motion to amend relies almost entirely on the principle of permissive amendment and emphasizes that Plaintiff had previously dismissed without prejudice certain of the claims that he now seeks to add. Even though Arata and certain claims against him were dismissed without prejudice, the proposed amendment must "be a proper subject for relief." Because this Court finds the proposed claims not to be cognizable, that the prior dismissal was without prejudice does not compel granting the proposed amendment.

**B.    Declaratory Relief**

Plaintiff contends that adding a cause of action for declaratory relief is the most reasonable way to resolve the issue of whether Defendant waived its right to arbitration under the insurance policy. Citing California law, Defendant urges the Court to deny plaintiff's request to

///

amend its breach of contract claim by separating its allegations of waiver into a separate declaratory judgment claim.

The Court must evaluate this issue using federal law. Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003), *quoting Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996). Federal law provides that a court may, "upon the filing of an appropriate pleading," "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C § 2201. Federal Rule of Civil Procedure 57 provides:

> These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. . . The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory judgment action.

An equitable remedy, declaratory judgment is intended to adjudicate "the parties' rights and obligations on a matter in dispute regardless of whether claims for damages or injunctive relief have yet arisen." William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaff, *California Practice Guide: Federal Civil Procedure Before Trial* §10.3 (The Rutter Group 2011). Put another way, a declaratory judgment "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement de Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). The Declaratory Judgment Act's purpose is to relieve potential defendants from the uncertainty of potential litigation, in face of uncertainty regarding when or whether a threatening adversary might initiate suit. *Id. See also Pratt v. Wilson*, 770 F.Supp. 539, 545 (E.D.Cal. 1991). Determining the rights and

responsibilities of the parties to an insurance policy is a common subject of a declaratory judgment action. *See, e.g., United States v. Transport Indemnity Co.*, 544 F.2d 393 (9th Cir. 1976); *Great Divide Ins. Co. v. AOAO Maluna Kai Estates*, 492 F.Supp.2d 1216, 1225 (D. Hawaii 2007).

F.R.Civ.P. 57 explicitly provides that the existence of another adequate remedy will not preclude an otherwise-appropriate summary judgment.  That Plaintiff refers to waiver in paragraph 72 of the breach-of-contract claim need not preclude his bringing a declaratory judgment claim. Declaratory relief is often an effective alternative course even when other actions are available to the plaintiff. *Biggs v. Wilson*, 828 F.Supp. 774, 779 (E.D.Cal. 1991), *aff'd*, 1 F.3d 1537 (9th Cir. 1993), *cert. denied*, 510 U.S. 1081 (1994); *Pratt*, 770 F.Supp. at 545.

Because the Declaratory Judgment Act provides that a court *may* declare rights, each court is granted broad discretion to determine whether to consider a declaratory judgment issue. *See Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491, 494 (1942).  In *Brillhart*, in which the district court had to evaluate whether to consider a declaratory judgment action while a related case remained pending in state court, the relevant factors were (1) avoiding needless determination of state law issues; (2) discouraging litigants from filing declaratory judgment actions as a means of forum shopping, and (3) avoiding duplicative litigation. *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  The district court "must balance concerns of judicial administration, comity, and fairness to litigants. *American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994), *quoting Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).   In deciding whether to exercising its discretion to consider a declaratory judgment action, a district court must first determine that it has jurisdiction over the

9

proposed declaratory judgment action, then apply the *Brillhart* factors. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). Other factors include:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Id.* at 672 (*citations omitted*).

Plaintiff does not articulate any compelling reason for resolving the waiver issue in a declaratory judgment Granting Plaintiff's motion to again amend the complaint to add a declaratory judgment action regarding Defendant's waiver of arbitration and to eliminate the prior claim of waiver within the breach of contract action would serve no useful purpose in this case but would further delay resolution of Plaintiff's claims, which have been pending over nine years since his original accident. Plaintiff's motion to amend the complaint to re-characterize his claim of waiver as a declaratory judgment action is denied.

**C.     Malicious Prosecution**

Plaintiff contends that, by using legal process to unduly delay resolution of his claim, Defendants Nationwide, Allied, and Arata committed the intentional tort of malicious prosecution against Plaintiff. Nationwide responds that Plaintiff cannot allege a cognizable malicious prosecution claim since the Defendants did not commence or continue any legal action against Plaintiff. Nationwide is correct.

Malicious prosecution occurs when a person begins or continues judicial or administrative proceedings against another with malice and without probable cause. *See Axline*

*v. St. John's Hosp. & Health Center*, 63 Cal. App. 4th 907, 915 (1998), *disapproved of on other grounds by Hassan v. Mercy American River Hosp.*, 31 Cal.4th 709, 716 (2003); *Hardy v. Vial*, 48 Cal.2d 577 (1957); *Vargas v. Giacosa*, 121 Cal.App.2d 521, 529-30 (1953), *overruled in part on other grounds by Hardy*, 48 Cal.2d at 581-82.  To establish a cause of action for malicious prosecution, a plaintiff must demonstrate that a prior action (1) was commenced by or at the direction of the defendant, or that the defendant continued prosecution after discovering that it lacked probable cause; (2) lacked probable cause; and (3) was initiated with malice.  *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir.), *cert. denied*, 129 S.Ct. 174 (2008).  While it is true that malicious prosecution actions are not favored in the law, the law's disfavor does not, of itself, constitute a reason to reject a legitimate claim of malicious prosecution.  *Zamos v. Stroud*, 32 Cal.4th 958, 966 (2004).

In civil cases, the tort's purpose is to vindicate the right of an individual to be free from unjustifiable litigation by providing financial damages both for out-of-pocket expenditures for attorneys' fees and costs, and for the emotional distress and reputation injury associated with the groundless action.  *Jackson v. Yarbray*, 179 Cal.App.4th 75, 90 (2009).  The tort does not apply to a plaintiff who is forced to confront a defendant's groundless defense.  *Eastin v. Bank of Stockton*, 66 Cal. 123, 127 (1884).  The court stated:

> The plaintiff sets the law in motion; if he does so groundlessly and maliciously, he is the cause of the defendant's damage.  But the defendant stands only on his legal rights–the plaintiff having taken his case to court, the defendant has the privilege of calling upon him to prove it tho the satisfaction of the judge or jury, and he is guilty of no wrong in exercising this privilege.

*Id.*

///

As proposed, the proposed second amended complaint does not state a cognizable claim for malicious prosecution against the Defendants.

### D. Intentional Infliction of Emotional Distress

Plaintiff proposes to add a fourth claim for intentional infliction of emotional distress. Defendant correctly responds that the proposed claim for intentional infliction of emotional distress does not state a cognizable claim.

"The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct." *Burke v. County of Alameda*, 352 Fed.Appx. 216, 219 (9th Cir. 2009), *quoting Myung Chang v. Lederman*, 172 Cal.App.4th 67 (2009) (*internal quotations and marks omitted*). Defendant contends that Plaintiff fails to allege facts that could establish extreme and outrageous conduct.

To be considered outrageous, the defendant's conduct must have been so extreme as to exceed the bounds of conduct tolerated in a civilized community. *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Cross v. Bonded Adjustment Bureau*, 48 Cal.App.4th 266, 283 (1996), *quoting Molko v. Holy Spirit Ass'n*, 46 Cal.3d 1092, 1120 (1988), *cert. denied*, 490 U.S. 1084 (1989). "An insurer that denies a claim on reasonable grounds cannot be said to have acted outrageously." *Ayers v. Standard Ins. Co.*, 51 Fed.Appx. 222, 224 (9th Cir. 2002).

The range of insurer behavior that is considered reasonable is very broad. For example, in an unpublished case, the Ninth Circuit found the following allegations insufficient to constitute sufficiently outrageous behavior to support a claim for intentional infliction of emotional distress under California law: the insurer failed "to thoroughly investigate and evaluate the value of [specific stolen items]; interpreted the policy in an unduly restrictive manner; employed deceptive practices to avoid the claim; failed to make an offer to settle the claim before [the plaintiff] initiated litigation; withheld pertinent information regarding the value of [specific stolen items; filed a motion for summary judgment without proper cause; made an unreasonably low settlement offer; unreasonably withdrew the settlement offer; and compelled [the plaintiff] to retain counsel and institute legal proceedings to recover amounts due under the policy." See *Habeeb v. State Farm Fire and Casualty Co.*, 51 F.3d 280 (*Table*), 1995 WL 139229 at \*3 (9th Cir. March 29, 1995) (No. 93-16072). The second amended complaint only alleges similar acts. *See also Isaacson v. California Ins. Guarantee Ass'n*, 44 Cal.3d 775, 788-89 (1988) (insurer's failure to offer a settlement that the insureds considered adequate compensation was not outrageous conduct); *Coleman v. Republic Indemn. Ins. Co. of California*, 132 Cal.App.4th 403, 417 (2005) (misleading the insured regarding the applicable statute of limitations and advising the insured that no attorney was needed did not constitute outrageous conduct); *Ricard v. Pacific Indemnity Co.*, 132 Cal. App.3d 886, 890, 895 (1982) (insured's refusal to investigate, process and communicate with insured before finally denying the claim is not outrageous conduct as a matter of law); *Schlauch v. Hartford Accident & Indemnity Co.*, 146 Cal.App.3d 926, 930-31, 936 (1983) (insurer's misrepresenting pertinent facts and policy provisions, and failing to offer a fair settlement did not constitute outrageous conduct).

**E.**     **Motion for Remand**

Because the Court denies Plaintiff's motion to amend his complaint, the motion to remand based on the presence of Arata, a non-diverse defendant, is moot. Accordingly, the motion to remand is also denied.

**F.**     **Allied Insurance Company**

Because Allied Insurance Company is already named as a defendant in the first amended complaint, no amendment is necessary to add it as a defendant in a second amended complaint.

**III.**     **Conclusion and Order**

For the reasons set forth above, Plaintiff's motions to amend its complaint and for remand are hereby DENIED.

IT IS SO ORDERED.

**Dated:**   **May 27, 2011**                             /s/ Sandra M. Snyder
                                                                            UNITED STATES MAGISTRATE JUDGE